IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-00108-PAB-KMT

MICHAEL SEXTON,

      Plaintiff,

v.

CITY OF COLORADO SPRINGS, and
MATTHEW ANDERSON, in his individual and official capacities,

      Defendants.

---

## ORDER

---

      This matter is before the Court on City Defendants' Motion to Dismiss [Docket No. 20], filed on March 30, 2020.  Defendants Matthew Anderson ("Officer Anderson") and the City of Colorado Springs ("City" or "Colorado Springs") will be collectively referred to as the "City Defendants."  Plaintiff Michael Sexton filed a response [Docket No. 30] and the City Defendants filed a reply [Docket No. 31].  The Court has jurisdiction under 28 U.S.C. § 1331.

## I.  BACKGROUND[1]

      On June 7, 2019, plaintiff left the 7-11 store near the intersection of 30th Street and Colorado Avenue in Colorado Springs, Colorado.  Docket No. 1 at 3, ¶ 10.  Officer Anderson drove by that location in his patrol vehicle while plaintiff stood in the parking lot.  *Id.*, ¶ 11.  As Officer Anderson passed, plaintiff "flipped off" the car with his middle

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss.

finger.  *Id.*  Officer Anderson saw plaintiff's gesture, made a U-turn across four lanes of traffic to contact plaintiff, and asked plaintiff if he needed help.  *Id.*, ¶ 12.  Plaintiff told Officer Anderson that he did not need help, and Officer Anderson began to drive away on 30th Street.  *Id.*, ¶ 13.

As Officer Anderson drove away, plaintiff looked both ways and, seeing no cars in the area, crossed 30th Street.  *Id.*, ¶ 14.  Officer Anderson made another U-turn and drove towards plaintiff; plaintiff began recording the incident on his phone.  *Id.* at 4, ¶ 15.  Plaintiff, standing on the sidewalk, flipped Officer Anderson off again.  *Id.*, ¶ 16. Immediately after plaintiff flipped him off for the second time, Officer Anderson activated the police lights on his car and pulled over.  *Id.*, ¶ 17.  Officer Anderson jumped out of his police car, grabbed plaintiff, pulled plaintiff to the police car by plaintiff's wrist, and shoved plaintiff against and over the hood of the police car.  *Id.*, ¶ 18.  Plaintiff asked Officer Anderson to please "calm down," but Officer Anderson continued to pin plaintiff to the hood of the police car with his entire body weight while wrenching plaintiff's arm behind plaintiff's back.  *Id.*, ¶¶ 20-21.  Plaintiff told Officer Anderson that he was not resisting and indicated with his body language that he was not resisting.  *Id.*, ¶ 22. Plaintiff asked Officer Anderson not to rough him up and told Officer Anderson that he was hurting plaintiff's arm, but Officer Anderson continued to pin plaintiff to the hood of the police car.  *Id.*  Plaintiff never said anything or made any gestures to indicate that he had a weapon, was attempting to flee, or was resisting.  *Id.* at 5, ¶ 23.

Officer Anderson then placed plaintiff in handcuffs.  *Id.*, ¶ 25.  Plaintiff asked Officer Anderson for his name and badge number, but Officer Anderson refused to

provide them.  *Id.*  While plaintiff was in handcuffs, Officer Anderson directed another Colorado Springs Police Department ("CSPD") officer, Officer Calderon, to search plaintiff's pockets.  *Id.*, ¶ 26.  Officer Anderson asked plaintiff why he was making obscene gestures, and plaintiff responded that it was his First Amendment right.  *Id.* at 6, ¶ 27.  Officer Anderson gave shifting reasons for detaining plaintiff before telling plaintiff that he had detained plaintiff for jaywalking.  *Id.*, ¶¶ 29-30.  Plaintiff was released from the handcuffs and issued a citation for jaywalking; plaintiff had been in handcuffs for approximately a half hour by that point.  *Id.*, ¶ 31.

While plaintiff was in handcuffs, plaintiff noticed another individual crossing 30th Street at the same location that plaintiff had.  *Id.*, ¶ 30.  When plaintiff pointed this out to Officer Anderson, Officer Anderson responded, "well, sir, since you pay our bills and stuff, we want to give you our full attention."  *Id.*  At this point, there were multiple officers on the scene; none of them contacted the person crossing the street.  *Id.*

After plaintiff was released, he attempted to speak with Officer Anderson's superior who was on the scene.  *Id.* at 7, ¶ 33.  As plaintiff complained to the sergeant, Officer Anderson came over and began arguing with plaintiff and "revealed his true motivation for arresting Mr. Sexton: that fact that Mr. Sexton had flipped off Defendant Anderson."  *Id.*

Officer Anderson issued plaintiff a citation under Colorado Springs Municipal Code § 10.18.104, which states:

> A. Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles upon the roadway. B. Any pedestrian crossing the roadway at a point where a pedestrian tunnel or

overhead pedestrian crossing has been provided, shall yield the right of way to all vehicles upon the roadway. C. Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk. D. No pedestrian shall cross a roadway intersection diagonally unless authorized by official traffic control devices; and, when authorized to cross diagonally, pedestrians shall cross only in accord with the official traffic control devices pertaining to the crossing movements.

*Id.*, ¶ 35.  The citation states that "[s]ubject crossed the street in between 2 marked intersections."  *Id.*, ¶ 36.  Colorado Springs prosecuted plaintiff for almost three months before dismissing the charges against him.  *Id.* at 8, ¶ 38.  At the same time the charges against plaintiff were dismissed, Colorado Springs found that Officer Anderson had violated CSPD's Discretionary Judgment policy, resulting in CSPD disciplining Officer Anderson.  *Id.*, ¶ 39.  However, Officer Anderson was not disciplined for "his wrongful arrest, clear violation of the First Amendment, and unlawful use of force."  *Id.*, ¶ 40. Plaintiff alleges that Officer Anderson's treatment of plaintiff was pursuant to Colorado Springs's customs and practices of unlawful conduct.  *Id.*, ¶ 42.

Plaintiff brings the following claims against both defendants pursuant to 42 U.S.C. § 1983: (a) claim one, First Amendment violation of free speech; (b) claim two, First Amendment retaliation; (c) claim three, Fourth Amendment unreasonable seizure; (d) claim five, Fourth Amendment excessive force; and (e) claim six, Fourth Amendment malicious prosecution.  Docket No. 1 at 22-30, ¶¶ 74-143.  Plaintiff brings claim four, Fourth Amendment unreasonable search, against Officer Anderson only.  *Id.* at 26-27, ¶¶ 110-17.

Defendants move to dismiss the claims against Officer Anderson due to failure to state a claim and qualified immunity.  Docket No. 20 at 4-5.  Defendants move to

dismiss the claims against the City due to plaintiff's failure to identify a CSPD custom or policy of abridging First or Fourth Amendment rights.  *Id.* at 13.

## II.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

## III.  ANALYSIS

The Court will first address the claims against Officer Anderson.

### A.  Officer Anderson

The complaint brings claims against Officer Anderson in his individual and official capacities.  *See* Docket No. 1 at 1.  Defendants argue that plaintiff cannot bring claims against Officer Anderson in his official capacity because plaintiff also names the City as a defendant.  Docket No. 20 at 4-5.  Plaintiff agrees that it is proper to dismiss the claims against Officer Anderson in his official capacity as duplicative.  Docket No. 30 at

16 n.19.  Accordingly, the Court will dismiss the claims against Officer Anderson in his official capacity.  *See Silverstein v. Fed. Bureau of Prisons*, 704 F. Supp. 2d 1077, 1087 (D. Colo. 2010) ("Where . . . the entity is also named, there is no need for an official-capacity claim.").

Officer Anderson argues that he is entitled to qualified immunity on all of plaintiff's claims against him in his individual capacity.  Docket No. 20 at 2.  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard.  *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v.*

*Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct.*"  T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

### 1.  Claim Three – Fourth Amendment Unreasonable Seizure

Plaintiff alleges that Officer Anderson stopped him without reasonable suspicion, probable cause, or a warrant, causing an unreasonable seizure.  Docket No. 1 at 25-26, ¶¶ 99-109.  Defendants respond that Officer Anderson is entitled to qualified immunity because he had both reasonable suspicion and probable cause to contact and detain plaintiff.  Docket No. 20 at 5-6.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).  The Supreme Court has identified three types of police encounters with citizens: consensual encounters, investigative stops, and arrests.  *Cortez v. McCauley*,

478 F.3d 1108, 1115 (10th Cir. 2007) (en banc).  Consensual encounters are not seizures under the Fourth Amendment.  *Id.*  Investigative detentions, also called *Terry* stops, are seizures within the meaning of the Fourth Amendment and allow a police officer to briefly detain a person for investigative purposes.  *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012).  However, the officer need only have a reasonable suspicion of criminal activity, not probable cause.  *Id.*  An arrest requires probable cause to believe that the arrestee committed a crime.  *Plascencia v. Taylor*, 514 F. App'x 711, 715 (10th Cir. 2013) (unpublished).  "An arrest is distinguished [from an investigatory stop] by the involuntary, highly intrusive nature of the encounter."  *Cortez*, 478 F.3d at 1115 (quotation omitted).

### a.  Arrest

The parties state at various points that plaintiff was either "detained" or "arrested."  *See* Docket No. 20 at 5; Docket No. 30 at 12.  The Court finds, based upon the allegations of the complaint, that plaintiff was arrested.  A seizure is not necessarily an arrest merely because the subject of the detention is placed in handcuffs.  *See United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993); *United States v. Miller*, 974 F.2d 953, 957 (8th Cir. 1992) ("Numerous cases have held that a police officer's use of handcuffs can be a reasonable precaution during a *Terry* stop.").  However, the "use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest."  *Cortez*, 478 F.3d at 1115-16 (quotation marks omitted).  Courts consider the degree of force used in determining whether the seizure was an investigative detention or arrest, and physical restraint is a

8

"hallmark" factor in determining whether a *Terry* stop was actually an arrest. *Plascencia*, 514 F. App'x at 716 (citing *Morelli v. Webster*, 552 F.3d 12, 20 (1st Cir. 2009)).

Defendants cite *United States v. Flowers*, 203 F. App'x 221, 223 (10th Cir. 2006) (unpublished), for the proposition that the use of handcuffs did not make the detention an arrest.  However, in *Flowers*, the police were investigating a report of an armed man and a caller had verified that Flowers previously had a gun.  *Id.* at 224.  An officer may use "[f]orceful methods . . . during an investigative detention short of arrest only when such methods are necessary for officer protection."  *Manzanares v. Higdon*, 575 F.3d 1135, 1148 (10th Cir. 2009).  The facts as pled do not support a fear that plaintiff was armed or dangerous, especially because Officer Anderson had previously spoken with plaintiff after plaintiff flipped off Officer Anderson the first time.  Docket No. 1 at 3, ¶¶ 12-13.  Because Officer Anderson immediately pinned plaintiff to the hood of the police vehicle and then placed plaintiff in handcuffs for about thirty minutes, the Court finds that this was an arrest, not an investigatory detention.

### b.  Probable Cause

Officer Anderson detained and ticketed plaintiff under Colorado Springs Municipal Code § 10.18.104.  Docket No. 1 at 7, ¶¶ 34-36.  The relevant portion of this ordinance states that "[b]etween adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk."  COLO. SPRINGS, COLO., MUN. CODE § 10.18.104(C).  Plaintiff alleges that Officer Anderson did not have probable cause because there were not two adjacent

9

intersections with traffic signals.  Docket No. 1 at 8, ¶ 37.  Plaintiff notes that the

adjacent intersection Officer Anderson "pointed out" had neither a traffic signal nor a

crosswalk, *id.*, but that the municipal code only prohibits crossing outside of a marked

crosswalk between two adjacent traffic signals.  Defendants argue that Officer Anderson

reasonably concluded that an intersection two blocks away was "adjacent" to the

Colorado Avenue intersection with 30th Street.[2]  Docket No. 20 at 7.

Plaintiff crossed 30th Street and was arrested in the middle of the block.  *See*

Docket No. 1 at 3, ¶ 14.  The intersection to the south (with Colorado Avenue) is

controlled by a traffic light and is marked with a crosswalk.  Docket Nos. 20-2, 20-4.

The intersection to the north (with Pikes Peak Avenue) is not controlled with a traffic

light and is not marked with a crosswalk.  *See* Docket No. 1 at 8, ¶ 37.  As a result, if the

term "adjacent" means "next to," as plaintiff seems to suggest, Docket No. 30 at 7-8,

there were not two adjacent intersections with traffic signals and marked crosswalks

and therefore the ordinance did not apply to him.  Defendants point out, however, that

the next intersection north along 30th Street (at Kiowa Street), i.e. the intersection a

---

[2] Defendants ask the Court to take judicial notice of two Google Maps images and a map of the area in question.  Docket No. 20 at 7.  Plaintiff asks the Court to exercise its discretion to refuse to take judicial notice of these exhibits.  Docket No. 30 at 1 n.1.  The Court may consider facts subject to judicial notice at the motion to dismiss stage without converting the motion to dismiss into one for summary judgment.  *Tal v. Hogan*, 453 F.3d 1244, 1264-65 n.24 (10th Cir. 2006).  "However, '[t]he documents may only be considered to show their contents, not to prove the truth of matters asserted therein.'" *Id.* (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).  The Court may "take judicial notice of a Google map and satellite image as a source whose accuracy cannot reasonably be questioned."  *Pahls v. Thomas*, 718 F.3d 1210, 1216 n.1 (10th Cir. 2013) (internal quotation marks and alterations omitted).  Plaintiff does not dispute the accuracy of the map and photos provided by defendants.  *See* Docket No. 30 at 1 n.1.  Accordingly, the Court exercises its discretion to take judicial notice of the map and photos.

block and a half away from the point of arrest, is controlled by a traffic light.  Docket Nos. 20 at 7, 20-3, 20-4.  Therefore, according to defendants, if "adjacent" means "lying near or close to," a reasonable officer would have arguable probable cause to believe that plaintiff violated the ordinance because the controlled intersections two blocks apart are "near or close to" each other.  Docket No. 20 at 6-7.

The parties' various definitions of "adjacent" raises the issue of how the Court should consider the interpretation of an ordinance or statute as part of the probable cause analysis.  "In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court."  *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991) (reversing a holding that the probable cause determination was a question for the trier of fact because "[i]mmunity ordinarily should be decided by the court long before trial")).  A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence.  *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).  In determining whether an officer has probable cause for an arrest, the Court is to "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations marks and citation omitted).  Probable cause depends on the totality of the circumstances and is not a high bar.  *Id.*

> The basic federal constitutional right of freedom from arrest without probable cause is undoubtedly clearly established by federal cases. But the precise scope of that right uniquely *depends on the contours of a state's substantive criminal law* in this case because the Defendants claim to have had probable cause based on a state criminal statute. And as to the interpretation of [that state's] criminal law, other than the statute itself . . . , [that state's] Supreme Court is the ultimate authority. So we look to the [state] Supreme Court's decisions when inquiring whether the Defendants' interpretation of the . . . statute was one that a reasonable officer would have held at the time of [Plaintiff's] arrest.

*A.M. ex rel. F.M. v. Holmes*, 830 F.3d 1123, 1140 (10th Cir. 2016) (quoting *Kaufman v. Higgs*, 697 F.3d 1297, 1300-01 (10th Cir. 2012)). A court is "guided, first, by the text of [the statute] and, then, by any relevant state and federal decisions interpreting its import." *Id.* at 1141. Reliance on a statue or regulation does not make an official's conduct objectively reasonable if, *inter alia*, the "the officer 'unlawfully enforces [such] ordinance . . . in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance.'" *Mimic, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 847 (10th Cir. 2005) (quoting *Grossman v. City of Portland*, 33 F.3d 1200, 1209-10 (9th Cir. 1994)). The determination of whether an officer's reliance on a statute makes his conduct objectively reasonable turns, *inter alia*, on "the degree of specificity with which the statute authorized the conduct in question." *Holmes*, 830 F.3d at 1141. The standard is objective; the subjective belief of an individual officer whether there is probable cause is not dispositive. *See Quinn v. Young*, 780 F.3d 998, 1006 (10th Cir. 2015).

Neither the parties nor the Court has identified caselaw interpreting the meaning of "adjacent" in the Colorado Springs Municipal Code.[3] The Oxford English Dictionary

---

[3] This section of the Colorado Springs Municipal Code is identical to the Colorado Model Traffic Code. *See* Colo. Rev. Stat. § 42-4-803(3) ("Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross

defines "adjacent" as "[n]ext to or very near something else; neighbouring; bordering, contiguous; adjoining." *Adjacent*, Oxford English Dictionary (3d ed. 2011). *See Kaufman*, 697 F.3d at 1301 (looking to Oxford New English Dictionary to define "obstacle" in Colorado obstruction of a peace officer statute to determine whether plaintiff's actions amounted to probable cause). Based on this definition of adjacent, the traffic signal at the Kiowa Street intersection cannot be considered adjacent. It is neither next to, neighboring, bordering, contiguous, or adjoining the Colorado Avenue and 30th Street intersection. Even the definition "very near something else" does not reach the traffic signal at Kiowa Street; that traffic signal was more than a block away.

Defendants argue that the definition of "adjacent" in Black's Law Dictionary, "[l]ying near or close to, but not necessarily touching," means that the Kiowa Street traffic signal was an adjacent intersection. Docket No. 20 at 6. As just discussed, however, a traffic signal two blocks away is not "[l]ying near or close to" the traffic signal at the intersection of 30th Street and Colorado Avenue. Defendants do not explain why, in the context of a jaywalking ordinance that does not otherwise penalize crossing the street except when failing to yield the right of way to vehicles, an ordinance would regulate jaywalking between controlled intersections two blocks apart, especially given that a pedestrian, due to the distance, would probably not be aware of at least one of the intersections' controlled status. The Court finds that the definition of "adjacent" as "next to" is consistent with the intent of the ordinance and comports with the plain and ordinary meaning of adjacent.

at any place except in a marked crosswalk."). However, the Court has not identified any cases interpreting the meaning of "adjacent" in this section of the model traffic code.

The Court's interpretation of "adjacent" is consistent with the interpretation of ordinances with identical language from other states. *See United States v. Jacobs*, 2019 WL 1861316, at *2-3 (D. Nev. Apr. 25, 2019) (finding no probable cause under identical ordinance where, "at the location where defendant allegedly jaywalked, near the intersection of Lake Mead and Radwick, there were no traffic control devices in operation at the intersections to the immediate east or west"); *State v. Crane*, 358 P.3d 877 (Table), 2015 WL 6456575, at *6 (Kan. Ct. App. Oct. 23, 2015) (finding that defendant did not violate Kansas statute identical to Colorado Springs's ordinance because "there was no traffic-control signal at the next intersection"); *State v. Ramey*, 2016 WL 685357, at *3, *7 (Ohio Ct. App. Feb. 19, 2016) (stating, under identical ordinance, that jaywalking offense was "mistaken" because there was no marked crosswalk or traffic control signal at either adjacent intersection).

The well-pled facts of the complaint state that the intersection "next to" plaintiff did not have a traffic signal. Docket No. 1 at 5, 8 ¶¶ 26, 37.[4] Because the municipal ordinance only prohibits crossing outside of a marked crosswalk between intersections with traffic signals that are adjacent, or next to, each other, plaintiff could not have violated the municipal code. Therefore, the Court finds that plaintiff has pled sufficient facts that, when viewed from the standpoint of a reasonable officer, are insufficient to establish probable cause to arrest plaintiff for violating Colorado Springs Municipal Code § 10.18.104(C).

---

[4] In defendants' reply, defendants argue that plaintiff concedes that the intersections of 30th Street and Colorado Avenue and 30th Street and Kiowa Street are "adjacent," and thus that Officer Anderson had probable cause. Docket No. 31 at 2-3. The Court disagrees. Plaintiff's complaint and response brief both argue that plaintiff did not cross between adjacent traffic signals. *See* Docket No. 1 at 8, ¶ 37; Docket No. 30 at 7-8.

### c. Clearly Established

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120. In the Tenth Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct."[5]  *Corona v. Aguilar*, 959 F.3d 1278, 1285 (10th Cir. 2020) (internal quotation marks and alterations omitted).

Officer Anderson is entitled to qualified immunity if he "*could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (citation omitted).  Having found that the plain language of the ordinance did not give rise to probable cause to arrest plaintiff, the Court also finds that Officer Anderson's arrest was not reasonable. The ordinance does not generally forbid crossing outside of a crosswalk.  Instead, it states that, "[b]etween adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk." COLO. SPRINGS, COLO., MUN. CODE § 10.18.104(C).  A simple glance at the intersection of 30th Street and Pikes Peak Avenue would have revealed that there was no traffic

---

[5] Plaintiff argues that actual probable cause is the law of the Tenth Circuit, and cites *Bailey v. Twomey*, 791 F. App'x 724 (10th Cir. 2019) (unpublished).  Docket No. 30 at 5-6.  However, *Bailey* is not binding precedent.  Instead, the Court will follow *Corona v. Aguilar*, 959 F.3d 1278, 1285 (10th Cir. 2020), a more recent, published opinion. Plaintiff also attempts to cabin "arguable probable cause" to cases where there was a warrant.  Docket No. 30 at 6 n.3.  However, *Corona*, 959 F.3d at 1285, was a warrantless arrest and the Court therefore rejects plaintiff's argument.

signal.  Any mistake that this intersection had a traffic signal cannot be considered reasonable.  Therefore, Officer Anderson violated plaintiff's clearly established right to be free of an arrest unsupported by probable cause when he made the unreasonable determination that plaintiff had violated the ordinance.  *See Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008) (denying an officer's assertion of qualified immunity because the arrest was clearly outside the scope of the New Mexico disorderly conduct statute relied upon by the officer to make the arrest); *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020), *petition for cert. filed*, No. 20-1082 (U.S. Feb. 8, 2021) (upholding district court denial of qualified immunity because, "based on the plain language of the Utah statutes, Deputy Gardner could not have reasonably believed that he had probable cause to arrest Mglej").  Therefore, the Court will deny defendants' motion to dismiss claim three against Officer Anderson in his individual capacity.

### 2.  Claim Four – Fourth Amendment Unlawful Search

Plaintiff alleges that the search of his person while he was handcuffed was unlawful.  Docket No. 1 at 26.  Plaintiff alleges that Officer Anderson directed another officer, Officer Calderon, to search plaintiff's pockets.  *Id.* at 5, ¶ 26.  Plaintiff brings no claims against Officer Calderon in this lawsuit.  A government actor may be liable for the constitutional violation of another if the actor "set in motion a series of events that the defendant knew or reasonably should have known would cause others to deprive the plaintiff of [his] constitutional rights."  *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006).  Officer Anderson may be held liable for Officer Calderon's allegedly unlawful search if he proximately caused Officer Calderon's conduct.  *See Martinez v. Carson*, 697 F.3d at 1252, 1255 (10th Cir. 2012) ("[Defendants] may be held liable if the further

unlawful detention and arrest would not have occurred but for their conduct and if there were no unforeseeable intervening acts superseding their liability.").  The complaint alleges that Officer Calderon searched plaintiff at Officer Anderson's direction.  Docket No. 1 at 5, ¶ 26.  There were no intervening events, and Officer Calderon's search of plaintiff was a foreseeable result of Officer Anderson's direction to him to search plaintiff.  Therefore, plaintiff may properly allege a Fourth Amendment violation against Officer Anderson even though Officer Anderson did not search him.

A warrantless search of a person or place is permissible when contemporaneous to a lawful arrest.  *United States v. Robinson*, 414 U.S. 218, 225 (1973).  "However, because 'the fact of the lawful arrest . . . establishes the authority to search,' where probable cause for the arrest is lacking, the subsequent search is unconstitutional unless supported on other grounds."  *United States v. Romero*, 935 F.3d 1124, 1128 (10th Cir. 2019) (quoting *Robinson*, 414 U.S. at 235).  "Among the exceptions to the warrant requirement is a search incident to a lawful arrest."  *Arizona v. Gant*, 556 U.S. 332, 338 (2009).  However, given that the Court has found that, based on the well-pleaded facts, the arrest was not supported by probable cause, the search of plaintiff incident to arrest is also a constitutional violation.  *See Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1256 n.7 (10th Cir. 1998) ("Because this court concludes there was not probable cause to support the warrantless arrest, the pat-down search incident to arrest was also improper.").

The law is clearly established that officers need either a warrant or a valid exception to the warrant requirement in order to search a person.  *See Katz v. United States*, 389 U.S. 347, 357 (1967).  However, plaintiff's arrest was not supported by

probable cause and no proper exception to the warrant requirement has been identified

by defendants, meaning the search was unlawful.  Because plaintiff's right to be free of

a search incident to an unlawful arrest was clearly established, Officer Anderson is not

entitled to qualified immunity on this claim.[6]

### 3.  Claim Five – Fourth Amendment Excessive Force

"To state a claim of excessive force under the Fourth Amendment, a plaintiff

must show both that a seizure occurred and that the seizure was unreasonable."  *Bella*

*v. Chamberlain*, 24 F.3d 1251, 1255 (10th Cir. 1994) (quotation omitted).  The relevant

inquiry is whether the force used by Officer Anderson was "reasonable under the facts

and circumstances presented."  *See Fogarty*, 523 F.3d at 1159 (citing *Graham v.*

*Connor*, 490 U.S. 386, 396 (1989)).

When examining a claim of excessive force, "[a] court assesses the

reasonableness of an officer's conduct from the perspective of a reasonable officer on

the scene, acknowledging that the officer may be forced to make split-second

judgments in certain difficult circumstances."  *Buck v. City of Albuquerque*, 549 F.3d

1269, 1287-88 (10th Cir. 2008) (quoting *Marquez v. City of Albuquerque*, 399 F.3d

1216, 1220 (10th Cir. 2005)).  In evaluating the reasonableness of the force used during

a seizure, courts consider a series of factors including "the severity of the crime at

---

[6] Defendants also argue that this was a permissible pat-down pursuant to a *Terry* stop. Docket No. 20 at 8.  However, as noted above, the Court has found that plaintiff was arrested, not subject to an investigative detention.  Therefore, this was not a *Terry* stop that could support a pat-down search.  Moreover, the Tenth Circuit has "only allowed an officer [to] conduct a pat-down search (or 'frisk') if he or she harbors an articulable and reasonable suspicion that the person is armed and dangerous."  *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006) (internal quotation marks omitted).  None of the facts in the complaint give rise to an articulable and reasonable suspicion that plaintiff was armed or dangerous.

issue, whether the suspect poses an immediate threat to safety of the officers and others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

This test applies despite the fact that Officer Anderson did not have probable cause for the arrest. *Cortez*, 478 F. 3d at 1126 ("[I]n a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force."); *see also Mglej*, 974 F.3d at 1165-66 (analyzing excessive force claim under *Graham* factors despite finding no probable cause for the arrest).

Plaintiff argues that Officer Anderson's actions were excessive as a matter of law. Docket No. 30 at 15. Taking the facts of the complaint as true, Officer Anderson grabbed plaintiff, pulled him to the police car by his wrist, and shoved him onto the hood of the police car. Docket No. 1 at 4, ¶ 18. Plaintiff did not resist, but Officer Anderson continued to pin him to the hood of the police car and to wrench plaintiff's arm behind his back. *Id.*, ¶ 21. Though not part of the allegations regarding excessive force, the Court notes that Officer Anderson then placed plaintiff in handcuffs, and plaintiff remained in handcuffs for the remainder of the encounter, about thirty minutes. [7] *Id.* at 5-6, ¶¶ 25, 31.

---

[7] Defendants argue that plaintiff has not shown an injury, which is required in this excessive force claim. Docket No. 20 at 9. In *Fisher v. City of Las Cruces*, 584 F.3d 888, 897 (10th Cir. 2009), the Tenth Circuit considered an excessive force claim related to handcuffing. Because handcuffing is appropriate in nearly every situation where an arrest is authorized, it presents an issue where the handcuffing may be permissible but

Considering the first and third *Graham* factors, plaintiff was detained for a minor municipal ordinance violation and did not actively resist arrest.  Docket No. 1 at 4-5, ¶¶ 18, 22, 23.  These factors weigh against the use of significant force.  *See Perea v. Baca*, 817 F.3d 1198, 1203 (10th Cir. 2016) ("[a] minor offense—at most—support[s] the use of minimal force.").  The second *Graham* factor, whether the suspect poses an immediate threat to the safety of the officers and others, also does not weigh in favor of the use of significant force.  Officer Anderson had spoken to plaintiff only minutes before, after plaintiff had flipped him off, and no incident had occurred.  *Id.* at 3, ¶¶ 12-13.  However, "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Graham*, 490 U.S. at 396 (internal quotation marks and citation omitted).  Based on the *Graham* factors, Officer Anderson was only entitled to use minimal force to effectuate plaintiff's arrest.

---

the manner in which it is done could render the force excessive.  *Id.* at 896-97.  The court held that, where an excessive force claim rests on the manner of handcuffing, the plaintiff must show both that the force used was more than what was reasonably necessary, and that the plaintiff suffered an actual injury that was more than *de minimis*.  *Id.* at 897.  The Tenth Circuit has subsequently clarified that the *de minimis* injury requirement only applies in handcuffing cases.  *See United States v. Rodella*, 804 F.3d 1317, 1327-29 (10th Cir. 2015) (stating that there is no *de minimis* injury requirement for excessive force claims that involve more than handcuffing).  Defendants cite *Anderson v. Arnold*, 710 F. App'x 343, 344 (10th Cir. 2018) (unpublished), where the court did imply the requirement of actual, non-*de minimis* injury for an excessive force claim unrelated to handcuffing.  However, the reasoning is brief and contained in an unpublished opinion.  *Id.*  The complaint does not allege that Officer Anderson wrenched plaintiff's arm behind his back in order to handcuff plaintiff.  *See* Docket No. 1 at 4-5, ¶¶ 21-25.  While defendants are correct that it would be a reasonable reading of the facts to conclude that Officer Anderson was attempting to position plaintiff for handcuffing, Docket No. 31 at 3, the Court cannot draw that conclusion in defendants' favor.  The Court need not resolve whether plaintiff was required to plead facts of non-*de minimis* injury because, as explained below, the force used by Anderson was not excessive, irrespective of a showing of injury.

Plaintiff argues that the force Officer Anderson used was more than "minimal." Docket No. 30 at 14-16.

Plaintiff cites a number of cases to support the proposition that the use of force against a restrained and subdued individual is excessive as a matter of law. *Id.* at 15. The Court finds that each of the cases plaintiff cites is either distinguishable or, in fact, supports the amount of force Officer Anderson used to restrain plaintiff. In *McCowan v. Morales*, 945 F.3d 1276, 1286 (10th Cir. 2019), the Tenth Circuit held that gratuitous force against a fully compliant, restrained, and non-threatening misdemeanant arrestee was unconstitutional. The crucial difference between *McCowan* and this case is that, when Officer Anderson pinned plaintiff to the hood of the police vehicle, plaintiff was not restrained in handcuffs. *See* Docket No. 1 at 4, ¶ 18. In *Grass v. Johnson*, 322 F. App'x 586, 590 (10th Cir. 2009) (unpublished), similarly, the Tenth Circuit held that a police officer's use of force against a cooperative individual *after* he was handcuffed was a question of reasonableness for the jury. In *Davis v. Clifford*, 825 F.3d 1131, 1137 (10th Cir. 2016), the court held that a police officer who performed a traffic stop on a vehicle with an outstanding warrant for driving with a suspended license, shattered the driver's side window, and then pulled the driver out through the broken window used disproportionate force because the driver posed no threat and had committed a minor infraction. The amount of force used in *Davis* – pulling a driver through a broken car window and pinning her to the ground – is not comparable to the force alleged here. In *McCoy v. Meyers*, 887 F.3d 1034, 1049, 1052 (10th Cir. 2018), the court held that the police officer was entitled to qualified immunity for performing a carotid restraint on an unsubdued arrestee, but use of the carotid restraint once the arrestee was handcuffed

and ziptied was unreasonable.  Again, this case supports the use of some force against an unrestrained individual.  *Casey v. City of Fed. Heights*, 509 F.3d 1278 (10th Cir. 2007), dealt with use of force against an unrestrained individual.  The plaintiff exited the municipal courthouse to retrieve money to pay a traffic fine while holding his court file. *Id.* at 1279.  Removing a public record from the courthouse was a misdemeanor under state law.  *Id.* at 1280.  While the plaintiff was returning to the courthouse, police officers tackled, tased, and beat him without explaining to the plaintiff that he was under arrest. *Id.*  The court held that the plaintiff had sufficiently shown a Fourth Amendment violation to survive summary judgment.  *Id.* at 1283, 1286.  The court stated that, because the plaintiff did not know why he was being arrested and was neither dangerous nor fleeing, a reasonable officer should have ordered plaintiff "to submit to an arrest or used minimal force to grab him while informing him that he was under arrest."  *Id.* at 1282.  In this case, Officer Anderson used force to grab plaintiff and pin him to the hood of the police vehicle.  Docket No. 1 at 4, ¶ 18.  This amount of force is not comparable to the tasing and beating that took place in *Casey.*

The Court finds *Dixon v. Richer*, 922 F.2d 1456, 1462 (10th Cir. 1991), to be the most informative case.  In *Dixon*, police officers had a reasonable basis to commit an investigative stop of the plaintiff, despite the fact that the plaintiff was not suspected of committing a crime.  922 F.2d at 1462.  The plaintiff submitted to being frisked by putting his hands against the side of his van, but when a police officer kicked him during the frisk the plaintiff turned around and said, "[i]s that f—ing necessary?"  *Id.* at 1458. Several minutes later, the officers frisked the plaintiff again and in the course of which, the officers kicked the plaintiff again, hit him in the stomach with a metal flashlight, and

then began to choke and beat him.  *Id.*  The Court held that the initial kick was reasonable given "an uncertain, potentially dangerous circumstance," but the subsequent beating when plaintiff had already been frisked and was not making any aggressive moves or threats was unreasonable and plaintiff had shown a Fourth Amendment violation sufficient to survive summary judgment.  *Id.* at 1462-63.

The cases above support that Officer Anderson was entitled to use minimal force to restrain plaintiff.  Grabbing plaintiff's wrist, pushing him against the car, and leaning him over the hood of the car are actions typical of an arrest.  Plaintiff additionally alleges that Officer Anderson pinned him to the hood of the police vehicle with his entire body weight and wrenched plaintiff's arm behind his back.  Docket No. 1 at 4, ¶¶ 18, 21. Plaintiff has not cited any case where a court has found a constitutional violation based on a similar level of force.  *See* Docket No. 30 at 15.  Plaintiff was unrestrained and Officer Anderson was entitled to use some force to effectuate the arrest.  *See Graham*, 490 U.S. at 396 ("Not every push or shove, even if it may later seem unnecessary . . . violates the Fourth Amendment.") (internal quotation marks and citation omitted)).  The Court finds that Officer Anderson's use of force to restrain plaintiff was not excessive, because, though minimal force was necessary under the circumstances, Officer Anderson only used the force required to restrain plaintiff.  Therefore, the Court will grant defendants' motion to dismiss claim five with respect to Officer Anderson in his individual capacity for failure to plead a constitutional violation.

### 4.  Claim Six — Fourth Amendment Violation of Malicious Prosecution

The elements of a malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in

favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)).  A court may infer malice if a defendant causes the prosecution without arguable probable cause.[8] *Stonecipher*, 759 F.3d at 1146.

Defendants argue that plaintiff does not plead facts sufficient to show that the original action terminated in plaintiff's favor.  Docket No. 20 at 9.  The complaint alleges that "[t]he charges against Mr. Sexton resulting from the actions/omissions of Defendant Anderson described herein were dismissed; thus, the original action against Mr. Sexton terminated in his favor."  Docket No. 1 at 30, ¶ 139.  In *Wilkins*, 528 F.3d at 802-03, the Tenth Circuit considered what constituted a favorable termination.  The prosecutor had filed a *nolle proseques*, which was a "formal abandonment" of the proceedings by the prosecutor.  *Id.* at 802.  The court found that an abandonment "is ordinarily insufficient to constitute a favorable termination," and the termination must "indicate the innocence of the accused" in some way.  *Id.* at 802-03.  When it is unclear whether a termination indicates innocence, the court "look[s] to the stated reasons for the dismissal as well as to the circumstances surrounding it and determine whether the failure to proceed implies a lack of reasonable grounds for the prosecution."  *Cordova v. City of Albuquerque*, 816 F.3d 645, 651 (10th Cir. 2016) (internal quotation marks omitted).  "If,

---

[8] The parties disagree over whether arguable probable cause is sufficient to entitle an officer to qualified immunity on a malicious prosecution claim, or whether actual probable cause is required.  *See* Docket No. 20 at 9; Docket No. 30 at 5-6, 13.  Because the Court finds that plaintiff has not sufficiently alleged that the original action terminated in his favor, the Court need not resolve this issue.

in view of the circumstances, the case [was] disposed of in a manner that leaves the question of the accused's innocence unresolved, there generally can be no malicious prosecution claim by the accused." *Montoya v. Vigil*, 898 F.3d 1056, 1066 (10th Cir. 2018).

Plaintiff's assertion that the dismissal of the charges indicates that the action terminated in plaintiff's favor is insufficient to support a finding of a favorable termination. *See Scheonfeld v. Thompson*, No. 16-cv-02630-MSK-NYW, 2017 WL 8944003, at *6 (D. Colo. June 7, 2017) (finding plaintiff did not plead sufficient facts at motion to dismiss stage to support finding that action terminated in his favor where plaintiff failed to describe the dismissal or the circumstances surrounding it), *report and recommendation adopted*, 2017 WL 3084470, at *3; *Lopez v. Prince*, No. 11-cv-02352-CMA-BNB, 2012 WL 3277178, at *6 (D. Colo. Aug. 9, 2012) (granting police officer's motion to dismiss malicious prosecution claim where the government filed a *nolle prosequi* "in the interests of justice").   Plaintiff argues that the fact that Officer Anderson was disciplined for violating the police department's Discretionary Judgment policy at the same time as the charges were dropped is evidence that the prosecutor dropped the charges because there was a lack of probable cause for the arrest.  Docket No. 30 at 13.  However, the complaint does not allege that Officer Anderson was disciplined for his arrest of plaintiff, and instead alleges that Officer Anderson "was not disciplined for his wrongful arrest, clear violation of the First Amendment, and unlawful use of force." Docket No. 1 at 8, ¶ 40.  Plaintiff has not sufficiently alleged that the decision by the CSPD to discipline Officer Anderson for a violation that may have been unrelated to

plaintiff's arrest in this case means that the prosecutor's decision to dismiss the charges was indicative of plaintiff's innocence.

The Court finds that plaintiff has not alleged facts sufficient to show that the prosecution terminated in his favor.  Accordingly, he fails to establish a constitutional violation.  *See Margheim v. Buljko*, 855 F.3d 1077, 1087 (10th Cir. 2017) ("Mr. Margheim is pursuing a malicious prosecution claim, and therefore, to satisfy the first part of his burden [to overcome qualified immunity], he must show the five elements of his claim to establish a [constitutional] violation.").  Therefore, the Court finds that there was no constitutional violation and the Court will grant defendants' motion to dismiss plaintiff's malicious prosecution claim against Officer Anderson in his individual capacity.

### 5.  Claim One – First Amendment Violation of Free Speech

Plaintiff alleges that Officer Anderson violated plaintiff's First Amendment rights by detaining and ticketing him for engaging in the protected speech of "displaying his middle finger."  Docket No. 1 at 22, ¶ 78.  Plaintiff alleges that this was a content- and viewpoint-based restriction on speech.  *Id.*, ¶ 79.  Defendants argue that, given plaintiff has not identified a court order, law, policy, or regulation that restricts plaintiff's ability to speak, plaintiff fails to state a claim distinct from his First Amendment retaliation claim.  Docket No. 20 at 4.  Defendants cite *Weise v. Colorado Springs*, 421 F. Supp. 3d 1019, 1039 (D. Colo. 2019), where the Court found that the plaintiff had failed to plead a First Amendment content-based restriction that was separate from the plaintiff's First Amendment retaliation claim.  Docket No. 20 at 4.  In *Weise*, the plaintiff did not identify or challenge a specific law, regulation, or policy that restricted her ability to speak.  421 F. Supp. 3d at 1039.  The Court treated the content-based restriction claim the same as

the plaintiff's retaliation claim because the plaintiff failed to articulate a distinct and legally supported basis for it. *Id.* at 1039-40.

Plaintiff here argues that he has pled a legal theory distinct from his retaliation claim. Docket No. 30 at 9. He cites *Brandt v. City of Westminster*, 300 F. Supp. 3d 1259, 1281-82 (D. Colo. 2018), where the plaintiff brought an "as applied" First Amendment claim in addition to a claim for retaliatory arrest. The court held that, though the claims were closely related, the plaintiff had pled two distinct legal theories. *Id.* at 1282. Defendants argue that *Brandt* is distinguishable because the plaintiff had been arrested pursuant to a disorderly conduct municipal ordinance. Docket No. 31 at 6, n.7.

The Court finds *Weise* distinguishable because the plaintiff in *Weise* was not arrested. *See* 421 F. Supp. 3d at 1029-30. Here, plaintiff alleges that his arrest was a content-based restriction on speech that is distinct from his retaliation claim. *See* Docket No. 1 at 22-23; Docket No. 30 at 9. An arrest by a police officer can give rise to a claim for a content-based restriction on free speech. *See Logsdon v. Hains*, 492 F.3d 334, 346 (6th Cir. 2007) (denying qualified immunity to police officers who arrested plaintiff "ostensibly for violating Ohio's criminal trespass law" because plaintiff alleged that the police officers removed him from a public forum due to the content of his speech); *World Wide St. Preachers Fellowship v. Town of Columbia*, 245 F. App'x 336, 343-45 (5th Cir. 2007) (unpublished) (finding genuine disputes of fact about the motivation of the government actors precluded the court from determining whether the arrest of the plaintiff at a demonstration was a content-based or content-neutral

restriction, and thus prevented the court from knowing whether to apply strict or intermediate scrutiny).

Defendant's argument that claim one should be dismissed is based entirely on the notion that claim one is duplicative of claim two. *See* Docket No. 20 at 4. However, because an arrest can give rise to a content-based restriction on free speech, plaintiff has pled a distinct basis for claim one. Therefore, the Court will deny defendants' motion to dismiss claim one against Officer Anderson in his individual capacity.[9]

### 6. *Claim Two – First Amendment Retaliation*

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted). To establish a First Amendment retaliation claim, plaintiff must demonstrate (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's action was substantially motivated as a response to his exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007). Ordinarily, a plaintiff must plead and prove the absence of probable cause for the arrest.[10] *Id.*

---

[9] Defendants argue that Officer Anderson is entitled to qualified immunity on all claims, but provide no specific reasoning for why Officer Anderson's conduct warrants qualified immunity for claim one. *See* Docket No. 20 at 2, 4-12. Therefore, defendants do not adequately assert the defense of qualified immunity on claim one and the Court only determines that claim one is not duplicative of claim two.

[10] Because plaintiff has sufficiently pled the absence of probable cause for the arrest, the Court does not address the parties' arguments concerning the exception to the

Defendants argue that plaintiff's allegations fail each prong of a retaliatory arrest claim.  Docket No. 20 at 12.  Defendants argue that plaintiff was not engaged in a constitutionally protected activity because jaywalking is not constitutionally protected.  *Id.* at 11 n.5.  However, plaintiff argues that his constitutionally protected activity was flipping off Officer Anderson.  The Court agrees that the First Amendment activity alleged in the complaint was criticism of the police on a public street, which is a constitutionally protected activity.  *See City of Houston v. Hill*, 482 U.S. 451, 461 (1987) ("The First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.").

Defendants argue that plaintiff did not suffer an actual injury because the only injury he alleges is feeling pain in his arm before being handcuffed.  Docket No. 20 at 11, n.5.  Plaintiff responds that a retaliatory arrest is an injury sufficient to chill a person of ordinary firmness.  Docket No. 30 at 11.  The Court finds that a retaliatory arrest unsupported by probable cause is an injury that would chill a person of ordinary firmness.  *See Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (unpublished) ("[P]ursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity.").  Additionally, the Court has found the absence of probable cause.  Therefore, the only issue left of defendants' argument that plaintiff has not stated a claim for First Amendment retaliation is whether plaintiff has adequately pled a retaliatory motive.

Defendants argue that the facts as pled by plaintiff do not show a retaliatory motive.  Docket No. 20 at 12.  The retaliatory motive "must be a 'but-for' cause,

Supreme Court's holding that probable cause defeats a claim for retaliatory arrest in *Nieves*, 139 S. Ct. at 1727.

meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves*, 139 S. Ct. at 1722 (citing *Hartman v. Moore*, 547 U.S. 250, 260 (2006) (recognizing that although it "may be dishonorable to act with an unconstitutional motive," an official's "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway")). Plaintiff alleges that, after he flipped off Officer Anderson from the 7-11 store parking lot, Officer Anderson made a U-turn across four lanes of traffic and contacted plaintiff. Docket No. 1 at 3, ¶¶ 11-13. After Officer Anderson and plaintiff spoke, Officer Anderson began to drive away, and plaintiff crossed the street outside of a crosswalk. *Id.*, ¶ 14. Officer Anderson then made another U-turn and began to drive toward plaintiff. *Id.* at 4, ¶ 15. Plaintiff started recording the incident on his phone and flipped Officer Anderson off again. *Id.*, ¶¶ 16-17. Immediately after plaintiff began recording and flipped Officer Anderson off again, Officer Anderson turned on his police lights. *Id.*, ¶ 17. Officer Anderson gave shifting reasons for arresting plaintiff before telling plaintiff that he had detained plaintiff for jaywalking. *Id.* at 6, ¶¶ 29-30. Plaintiff alleges that Officer Anderson arrested plaintiff for flipping him off. *Id.*, ¶ 27.

The close temporal proximity between plaintiff's protected speech and his arrest without probable cause can give rise to a strong inference that Officer Anderson was "substantially motivated" to arrest plaintiff because of plaintiff's protected. *See Esparza*, 523 F. App'x at 536 (upholding district court determination that close temporal proximity between protected speech and arrest, coupled with the absence of probable cause, "supported a strong inference that [defendant] was motivated by the complaints."); *cf. Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010) (plaintiff sufficiently pleaded that

action was in retaliation for his filing grievances by reciting facts indicating "that Defendants were aware of his protected activity, that his protected activity complained of Defendants' actions, and that the transfer was in close temporal proximity to the protected activity").  Defendants argue that Officer Anderson recontacted plaintiff because of "Plaintiff's illegal act," Docket No. 20 at 12, but the Court has already determined that there was no probable cause to arrest plaintiff.

The Court finds that the close temporal proximity between the protected speech and arrest, combined with the absence of probable cause, and the fact that Officer Anderson did not turn on his police lights until plaintiff flipped him off the second time, is sufficient to plead that a retaliatory motive was the "but-for" cause of Officer Anderson's arrest.  Plaintiff has therefore pled each element of a First Amendment retaliation claim.  Because the Court has found that plaintiff pleads a claim for retaliatory arrest, the Court will deny defendants' motion to dismiss claim two against Officer Anderson in his individual capacity.

### B.  City of Colorado Springs

Plaintiff brings claims one, two, three, five, and six against Colorado Springs.[11] Docket No. 1 at 22-30.  Plaintiff alleges that Colorado Springs has a policy or custom of

---

[11] Each of plaintiff's claims, except for plaintiff's unlawful search claim (claim four), are brought by "Plaintiff Against All Defendants."  *See, e.g.*, Docket No. 1 at 22-23, 25-28. The allegations in claim four all relate to Officer Anderson, but the claim does allege that "[a]s a legal and proximate cause of Defendants' actions, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of enjoyment of life, and other significant injuries, damages, and losses."  *Id.* at 26-27, ¶¶ 110-17.  It is thus unclear whether the use of the plural possessive for "Defendants'" indicates that claim four is brought against Colorado Springs as well.  *See id.*  Other portions of the complaint do contain allegations that Colorado Springs has a policy and practice of ratifying unlawful searches and failed to train its employees to avoid unlawful searches.  *Id.* at 10, ¶¶ 46,

content-based restrictions on free speech, retaliation for engaging in protected speech, unlawful seizures, excessive force, and malicious prosecutions and that each of these policies caused injuries to plaintiff. *Id.*

Local governments may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978). Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Id.* at 690 (footnote omitted). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694.

In order to state a claim for municipal liability under § 1983 for the actions of a municipal employee, a party must allege sufficient facts to demonstrate that it is plausible (1) that the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these

---

51. Even if claim four was brought against Colorado Springs, the Court will dismiss it for the same reasons given below as to claim three.

policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted). With this background in mind, the Court considers whether dismissal of the challenged claims is appropriate.  Plaintiff alleges the existence of a continuing, persistent, and widespread practice of unconstitutional conduct through "past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy."  Docket No. 30 at 17 (quoting *Arakji v. Hess,* No. 15-cv-00681-CMA, 2015 WL 7755975, at *5-7 (D. Colo. Dec. 2, 2015)).

The Court has determined that there were no constitutional violations for excessive force or malicious prosecution.  Accordingly, these claims also fail against the City, and the Court will therefore dismiss claims five and six against Colorado Springs. *See Jiron*, 392 F.3d at 419 n.8 ("[W]hen a finding of qualified immunity is based on a conclusion that the officer has committed no constitutional violation—i.e., the first step of the qualified immunity analysis—a finding of qualified immunity *does* preclude the imposition of municipal liability.").

### 1.  Municipal Policy

The complaint alleges, in claim one and two, that "Colorado Springs has a custom, policy, or practice of tolerating violations of the First Amendment of the United States Constitution related to Plaintiff."  Docket No. 1 at 23-24, ¶ 84, 95.  The complaint, in claim three, alleges that Colorado Springs has "a custom, practice or policy of tolerating violations of the Fourth Amendment of the United States Constitution related

to Plaintiff." *Id.* at 26, ¶ 107.  Defendants argue that, because these policies are alleged

only as "related to Plaintiff," and plaintiff only alleges one other incident between himself

and the CSPD, plaintiff cannot establish a municipal policy.[12]  Docket No. 20 at 13.

Plaintiff's response asserts generally that (1) plaintiff has been targeted by CSPD

for criticizing the police; (2) the complaint alleges four instances of retaliation for

exercising First Amendment rights and seven instances of arresting individuals without

probable cause; (3) plaintiff was subject to multiple harms by Officer Anderson's

unconstitutional conduct; (4) plaintiff alleges "the specific topic of the challenged policy

or training inadequacy"; and (5) Colorado Springs ratified these customs and practices,

and these customs caused plaintiff injury.  Docket No. 30 at 17-19 (quoting *Arakji*, 2015

WL 7755975, at *6).

The Court construes plaintiff's argument to be that he can establish a policy of

First and Fourth Amendment violations because (1) Colorado Springs has a widespread

practice of tolerating First Amendment violations and arresting people without probable

cause, as evidenced by incidents described in the complaint; (2) final policy makers

ratified subordinates' decisions to engage in First Amendment violations and arrests

without probable cause; and (3) Colorado Springs has a policy of failing to train its

officers, which causes the officers to violate the First Amendment and arrest individuals

without probable cause.

---

[12] In order to allege municipal liability, a plaintiff must plead the existence of a policy.
The Court declines to read the phrase "related to plaintiff" to mean that plaintiff believes
these policies are only directed at him.  Instead, the allegations in the complaint make
clear that plaintiff believes Colorado Springs has a policy of arresting other people
without probable cause as well.  *See* Docket No. 1 at 18-22, ¶¶ 65-73.

### a.  Informal Practice Amounting to a Widespread Custom

Plaintiff's complaint alleges twelves incidents of interactions between citizens and Colorado Springs.  Docket No. 1 at 12-22, ¶¶ 59-73.  Plaintiff alleges seven incidents of CSPD arresting individuals without probable cause.  *Id.* at 18-22, ¶¶ 65-73.  Four of these incidents involved arrests due to mistaken identities.  *Id.* at 18-21, ¶¶ 66-67, 71-72.  The other three involved omitting exculpatory evidence from an arrest warrant affidavit, a conspiracy by CSPD police officers to falsely charge and arrest an officer's ex-boyfriend, and an arrest for violating a law banning guns in a park that had been repealed 9 years earlier.  *Id.* at 20, ¶¶ 68-70.  One incident is from 2017 but the remainder are from 2009 and 2012.  *Id.* 18-21, ¶¶ 65-72.  None of these alleged incidents have any similarity to the facts of this case.

Plaintiff has alleged one incident in 2019 where he was arrested without probable cause for engaging in protected speech.  *Id.* at 11-12, ¶¶ 54-58.  Plaintiff also alleges (1) a 2013 incident where CSPD officers arrested an individual for verbally protesting the "CSPD officers' beating of another man"; (2) a 2015 arrest of an individual for filming a traffic stop; (3) a 2017 detention of an individual because the individual filmed police activity; and (4) retaliatory actions in 2016 and 2017 by the Colorado Springs City Council and City Attorney against an individual for whistleblowing on a government entity.  *Id.* at 13-15, ¶¶ 60-63.  The Court first considers which of these four alleged incidents are sufficiently similar to the facts of this case.

Plaintiff's complaint alleges that CSPD officers arrested Ryan Brown in 2015 for filming and asking the officers why the vehicle he was a passenger in had been pulled over.  Docket No. 1 at 13-14, ¶ 61.  The complaint alleges that, in response to Mr.

Brown asking why the officers had pulled over the vehicle and beginning to film, "the CSPD officers held Mr. Brown at gunpoint, forced him out of the vehicle, slammed him into the snowy parkway, and stopped his recording. *Id.* This does not allege that the officers conducted a retaliatory arrest because Mr. Brown criticized the police, and therefore is dissimilar from the facts of this case.[13]

Plaintiff alleges that CSPD officers arrested Terrell Clayton in 2017 because he filmed police activity outside of a CSPD station. *Id.* at 14, ¶ 62. The complaint alleges that CSPD officers asked Mr. Clayton for identification and, when he refused, they detained him. *Id.* This incident does not allege that the officers approached or arrested plaintiff for criticizing the police, and is therefore dissimilar from the facts of this case. Additionally, the allegations regarding Leslie Weise involve retaliatory action by the Colorado Springs City Council and City Attorney. *Id.* at 15-18, ¶ 63. This incident involves neither the CSPD nor an arrest, and is therefore dissimilar.

The Court finds that plaintiff has alleged two incidents sufficiently similar for the Court to consider them when determining whether plaintiff has pled the existence of a municipal policy of retaliatory arrest: plaintiff's own 2019 arrest for filming and criticizing the police and the 2013 arrest of Grant Bloomquist for verbally protesting CSPD officers' beating a man outside of a nightclub. *See* Docket No. 1 at 11-13, ¶¶ 56, 60-61. Both incidents involve an arrest allegedly due to the individual criticizing the police. The

---

[13] The Court notes that, in *Frasier v. Evans*, -- F.3d --, 2021 WL 1166405, at *14 (10th Cir. Mar. 29, 2021), the Tenth Circuit found that the First Amendment right to record the police performing their official duties in public spaces was not clearly established in 2014. The court declined to consider whether any such right actually exists. *Id.* at *11, n.4.

other three alleged retaliatory arrests are too different to be considered in determining whether Colorado Springs has a municipal policy of retaliatory arrests.

> With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct – no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible – or use other evidence, such as a police officers' statements attesting to the policy's existence.

*Griego v. City of Albuquerque*, 100 F. Supp. 3d 1192, 1213 (D.N.M. 2015).  Plaintiff has alleged two similar incidents of retaliatory arrests; his other allegations of arrests without probable cause and retaliatory actions are not similar enough to be considered part of a policy or custom.  *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1287, 1290 (10th Cir. 2019) (finding that prior incidents of excessive force against civilians on the street were too different from claim brought for excessive force against restrained inmate to be "similar prior incident[s]" for purposes of determining widespread practice of excessive force).

The Court must determine whether these two prior incidents are sufficient to show "an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law."  *Bryson*, 627 F.3d at 788. These two incidents took place in 2013 and 2019.  Plaintiff argues that three or more alleged incidents are sufficient to state a claim by citing *Est. of Valverde v. Dodge*, No. 16-cv-01703-MSK-MEH, 2017 WL 3530282, at *4 (D. Colo. Aug. 17, 2017), and *Sekerak v. City & Cnty. of Denver*, 1 F. Supp. 2d 1191, 1199 (D. Colo. 1998).  In *Est. of Valverde*, 2017 WL 3530282, at *4, the Court found that three examples of excessive force that spanned a significant time period could plausibly demonstrate the existence

of an informal custom or practice that resulted in the use of excessive force.  The Court

finds *Valverde* distinguishable because plaintiff has only alleged two similar incidents in

this case and in *Valverde* all three incidents alleged in the complaint had taken place in

the prior two years.  *Id.*, No. 16-cv-01703-MSK-MEH, Docket No. 27 at 8-9, ¶ 34.  In

*Sekerak*, 1 F. Supp. 2d at 1199, the court found that retaliatory incidents against three

other individuals was sufficient to state a claim, but noted that the claim "hangs by a thin

reed."  *Sekerak* is distinguishable because plaintiff has only alleged two similar prior

incidents.

The Court finds that two alleged incidents, one in 2013 and one in 2019, are

insufficient to show a practice so permanent and well settled that it constitutes a custom

or usage with the force of law.  *See Lankford v. City of Hobart*, 73 F.3d 283, 287 (10th

Cir. 1996) (noting that "isolated and sporadic acts" do not establish municipal liability for

§ 1983); *cf. Waller*, 932 F.3d at 1290  ("[D]escribing only one similar incident of

excessive force prior to his own injuries—fall[s] far short of plausibly alleging a

'widespread practice' of excessive force, much less a practice 'so permanent and well

settled as to constitute a custom or usage with the force of law.'" (quoting *Bryson*, 627

F.3d at 788)); *see also Wilson v. Cook Cnty.*, 742 F.3d 775, 780 (7th Cir. 2014)

("Although this court has not adopted any bright-line rules for establishing what

constitutes a widespread custom or practice, it is clear that a single incident -- or even

three incidents -- do not suffice.").  Therefore, plaintiff has not pled a policy of retaliatory

arrests or arrests without probable cause pursuant to an informal custom.[14]

---

[14] Plaintiff cites *Brandt*, 300 F. Supp. 3d at 1276, and *Lozman v. City of Riviera Beach*,
138 S. Ct. 1945, 1951 (2018), for the proposition that CSPD's targeting of him
personally "for engaging in protected speech" establishes municipal liability.  Docket No.

**b.  Ratification by a Final Policymaker**

Plaintiff also fails to allege "the ratification by such final policymakers of the

decisions – and the basis for them – of subordinates to whom authority was delegated

subject to these policymakers' review and approval."  *Id.* at 788.  Plaintiff argues that

"Colorado Springs knew of and continuously ratifies the customs and practices outlined

in the complaint."  Docket No. 30 at 19.  In order to state a claim under a ratification

theory of municipal liability, the complaint must "allege [] facts regarding an affirmative

approval of [the police officer's] actions."  *Twitchell v. Hutton*, No. 10-cv-01939-WYD-

KMT, 2011 WL 318827, at *5 (D. Colo. Jan. 28, 2011) (citing *Brammer–Hoelter v. Twin*

*Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010)); *Bryson*, 627 F.3d at 790

("[A] municipality will not be found liable under a ratification theory unless a final

decisionmaker ratifies an employee's specific unconstitutional actions, as well as the

basis for these actions.").  Even assuming that plaintiff could demonstrate the existence

of an official policy based only on Colorado Springs's failure to discipline Officer

Anderson, *see Jack v. Cnty. of Stanislaus*, 2017 WL 4123930, at *7 (E.D. Cal. Sept. 15,

2017) ("Ratification is more than acquiescence, and a mere failure to discipline does not

amount to ratification."); *C.F.B. v. Hayden*, 2019 WL 1299679, at *13 (D. Kan. Mar. 21,

2019) ("While this 'ratification' theory may be evidence of the existence of an informal

_____

30 at 19.  However, these cases are distinguishable because the plaintiff in each case
could establish a policy.  In *Brandt*, the plaintiff alleged that he had been cited or
arrested twenty-four times for engaging in protected speech, 300 F. Supp. at 1276; in
contrast, plaintiff has only alleged one other incident between himself and the CSPD.
*See* Docket No. 1 at 11-12.  In *Lozman*, 138 S. Ct. at 1951, the plaintiff alleged that the
city, through its legislators, "formed an official policy to retaliate against him and ordered
his arrest."  "The Court assume[d] . . .  that the arrest was taken pursuant to an official
city policy," but did not decide "whether there was such a policy and what its content
may have been."  *Id.  Lozman* is thus distinguishable because the Court assumed the
existence of such a policy.

policy, it is not alone enough to be considered an 'official policy' giving rise to *Monell* liability."), plaintiff has not identified the final policymakers who allegedly ratified Officer Anderson's conduct; rather, his allegations of ratification refer to the City of Colorado Springs generally. *See, e.g.*, Docket No. 1 at 8-9, ¶¶ 40, 45 (stating that Officer Anderson was not disciplined for his wrongful arrest of plaintiff and that "Defendant Colorado Springs" ratified unconstitutional arrests and condoned Officer Anderson's conduct). This is insufficient to demonstrate a policy for *Monell* liability. *See Rehberg v. City of Pueblo*, No. 10-cv-00261-LTB-KLM, 2012 WL 1326575, at *7 (D. Colo. Apr. 17, 2012) (finding ratification theory insufficient where complaint alleged that "Pueblo" and its "supervising officers" approved of the alleged unconstitutional conduct).

### c. Failure to Train

Plaintiff's final theory is that Colorado Springs is liable because it failed to adequately train or supervise officers on refraining from First Amendment retaliation and the need for probable cause to make arrests. Docket No. 1 at 10, 18 ¶¶ 46, 48-50, 64-65. To state a *Monell* claim based on the failure to train or supervise, a plaintiff must sufficiently allege that the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 822-823 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell*.").

Plaintiff alleges that Colorado Springs failed to train and supervise its employees to avoid First Amendment violations and unlawful seizures, and this failure was the "moving force and proximate cause of the violation of Mr. Sexton's constitutional rights." Docket No. 1 at 10, ¶¶ 46, 50.  The complaint gives examples of retaliatory actions and arrests without probable cause and alleges that these examples illustrate that Colorado Springs was aware of the "obvious need . . . for Defendant Colorado Springs to provide further training to CSPD officers on the necessity of not retaliating against individuals who protest police officers and/or record their misconduct" and "to provide further training to CSPD officers on the necessity of establishing probable cause before making an arrest."  *Id.* at 12-18, ¶¶ 59, 64-65.

However, these allegations are missing any supporting factual allegations providing a basis for plaintiff's failure-to-train theory; plaintiff does not set forth any facts concerning how Officer Anderson was trained, who he was trained by, or why his training was deficient.  *See Bark v. Chacon*, No. 10-cv-01570-WYD-MJW, 2011 WL 1884691, at *3 (D. Colo. May 18, 2011) (dismissing municipal liability claim where plaintiff had "generally allege[d]" that the individual defendants were not properly trained but had not "allege[d] specific deficiencies in training and supervision, or explain[ed] how the incident described in the Amended Complaint could have been avoided with different or better training and supervision"); *see also Erickson v. City of Lakewood*, No. 19-cv-02613-PAB-NYW, – F. Supp. 3d –, 2020 WL 5702278, at *9 (D. Colo. Sept. 24, 2020) (dismissing *Monell* claim where plaintiff failed to allege specific facts regarding the officers' training, did not identify individuals that allegedly failed to adequately

supervise or train, and did not contain allegations establishing a pattern of similar conduct).

Plaintiff argues that the Court can infer a policy of inadequate training based on the other alleged incidents. Docket No. 30 at 19-20. However, as noted above, the other alleged arrests without probable cause are too factually dissimilar to be considered part of a pattern. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quotation omitted). "In resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform. That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton*, 489 U.S. at 390-91. Plaintiff has alleged two other incidents of retaliatory arrest that are separated by six years; this is insufficient to demonstrate a policy of failure to train. While "policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action--the 'deliberate indifference'--necessary to trigger municipal liability," *Connick*, 563 U.S. at 62 (internal quotation marks and citation omitted), the allegations of the complaint do not show that Colorado Springs knew or should have known that its failure to provide further training

on retaliatory arrests would result in a constitutional violation.  Therefore, the Court finds that plaintiff has not alleged a failure to train theory that supports municipal liability.[15]

Plaintiff does not allege any facts regarding supervisory deficiencies in the CSPD, how Officer Anderson's supervision was inadequate, or how this inadequate supervision caused his injury.  Therefore, he has failed to state a claim for supervisory liability.  *See Waller*, 932 F.3d at 1289 (holding that complaint failed to state a claim where plaintiff did not "allege[] any facts regarding any supposed supervisory deficiencies in the Denver Sheriff Department, much less any facts describing how Deputy Lovingier's supervision was inadequate or how his purportedly inadequate supervision caused [plaintiff's] injury").

Because the Court has found that plaintiff does not allege a municipal policy of First Amendment violations or tolerating unreasonable seizures, the Court will dismiss with prejudice claims one, two, and three against Colorado Springs.  Because the Court has found no constitutional violation for claims five, and six, the Court will dismiss these claims against Colorado Springs with prejudice.  Accordingly, the Court will dismiss Colorado Springs from this lawsuit.

---

[15] The complaint fails to allege facts of a violation of the First Amendment, separate from retaliation, against any person besides plaintiff.  The complaint alleges that Colorado Springs had a policy of targeting plaintiff for criticizing the CSPD.  Docket No. 1 at 11. However, the allegations of incidents related to other individuals are that Colorado Springs "has a custom and practice of arresting individuals in *retaliation* for their exercise of their First Amendment rights, particularly in response to criticism and monitoring of police activity."  *Id.* at 12 (emphasis added); *see also id.* ("The following cases show that at the time of Mr. Sexton's arrest, there was an informal custom and practice, that was known to Defendant Colorado Springs, of retaliating against individuals who protest police officers and/or record their misconduct.").  Therefore, the Court finds that plaintiff's claim that Colorado Springs has a policy of a content and viewpoint discrimination in violation of the First Amendment is supported only by the one incident he describes between himself and the CSPD.  This fails to state a policy for the reasons given regarding claims two and three.

**IV.  CONCLUSION**

For the foregoing reasons, it is

**ORDERED** that City Defendants' Motion to Dismiss [Docket No. 20] is

**GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that claims five and six are **DISMISSED** with prejudice against Officer

Anderson in his individual capacity.  It is further

**ORDERED** that all claims are **DISMISSED** against Officer Anderson in his official

capacity.  It is further

**ORDERED** that claims one, two, three, five, and six are **DISMISSED** with

prejudice against Colorado Springs.  It is further

**ORDERED** that Colorado Springs is **DISMISSED** from this lawsuit.


DATED March 31, 2021.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge